UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LEON ALLEN, *on behalf of himself and all others similarly situated*, | ) ) ) | Case No.: 1:23 CV 103 |
| Plaintiff | ) ) ) | |
| | ) | JUDGE SOLOMON OLIVER, JR. |
| v. | ) ) | |
| WENCO MANAGEMENT, LLC, | ) ) | |
| Defendant | ) | <u>ORDER</u> |

Currently pending before the court in the above-captioned case is Defendant Wenco Management, LLC's ("Wenco") Motion to Dismiss for failure to state a claim upon which relief can be granted (ECF No. 4). For the reasons that follow, the court grants the Motion in part and denies it in part.

**I. BACKGROUND**

Wenco owns and operates Wendy's franchises throughout the Midwest. (Compl. ¶ 10, ECF No. 1-1.) Plaintiff Leon Allen works at one of them. (*Id.* ¶ 28.) He alleges that Wenco collects "substantial amounts" of its employees' personally identifiable information ("PII"), including their names, Social Security numbers ("SSNs"), and health-insurance plans. (*Id.* ¶ 11.) The problem, as Allen sees it, is that Wenco takes poor care of this information. (*Id.* ¶ 26.)

According to Allen, Wenco uses "outdated and insecure computer systems and software that are easy to hack." (*Id.*) Making matters worse, Wenco inadequately trains its employees on "basic cybersecurity protocols." (*Id.* ¶ 22.) And in August 2022, these deficiencies led to a predictable

result: hackers "obtained access to Wenco's computer systems and stole PII belonging to its employees." (*Id.* ¶ 2.) This PII "is now in the hands of criminals," leaving Allen—and 20,525 other Wenco employees—vulnerable to identity theft. (*Id.* ¶ 2, 60.)

Allen has spent extensive time handling the fallout of this data breach. (*Id.* ¶ 30.) Given the risk of identity theft, he's forced to monitor his bank accounts and credit score more than before, limiting his availability for "other activities and duties." (*Id.*) The value of his PII—a "new and valuable form of currency," per the FTC—has plummeted. (*Id.* ¶ 50–51.) He suffers "anxiety and increased concerns for the loss of his privacy." (*Id.* ¶ 32.) And he anticipates incurring expenses "for years to come" to "mitigate and address" these harms (*Id.* ¶ 35.) Had he known about Wenco's substandard cybersecurity, he never would have entrusted his PII to it. (*Id.* ¶ 34.)

Following the breach, Allen—on behalf of a proposed class of all Wenco employees whose PII was stolen—sued Wenco in state court for negligence and negligence per se.[1] After removing the case to this court, Wenco moved to dismiss Allen's Complaint for failure to state a claim upon which relief can be granted. Allen opposed the Motion (ECF No. 5), and Wenco filed a reply (ECF No. 7). The matter is now ripe for adjudication.

## II. LEGAL STANDARD

The court examines the legal sufficiency of a plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). The Supreme Court clarified the law regarding what a plaintiff must plead in order to survive a Rule 12(b)(6) motion in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). When determining whether the plaintiff has stated a claim

---

[1] Allen's negligence per se claim is based on Wenco's alleged violation of Section 5 of the FTC Act, which prohibits "unfair . . . practices in or affecting commerce." *See* 15 U.S.C. § 45.

upon which relief can be granted, the court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id.* And a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### III. LAW AND ANALYSIS

Wenco argues that dismissal is proper for three reasons: first, because Allen failed to plead legally cognizable damages; second, because the economic-loss rule bars Allen's claims; and third, because the FTC Act lacks a private right of action. The first two arguments apply to both of Allen's claims; the third applies only to the negligence per se claim. All three present issues of Ohio common law, so the court must "look to the final decisions" of the Supreme Court of Ohio in resolving them. *Conlin v. Mortg. Elec. Registration Sys.*, 714 F.3d 355, 358 (6th Cir. 2013). If no Supreme Court of Ohio opinion is "directly on point," then the court must "make an *Erie* guess to determine how that court, if presented with the issue, would resolve it." *Id.* at 358–59. The court addresses Wenco's arguments in turn.

A.   **Damages**

To state a claim for negligence, a plaintiff must allege damages. *See, e.g.*, *Rieger v. Giant Eagle, Inc.*, 2019-Ohio-3745, ¶ 10, 157 Ohio St. 3d 512. Wenco says that Allen failed to do so here.

More specifically, Wenco argues that none of the damages that Allen *has* alleged are cognizable under Ohio negligence law. (Mot. at 6–15.) In response, Allen claims to have suffered two cognizable injuries: (1) a "privacy injury arising from the unauthorized disclosure of his PII in the data breach"; and (2) a "substantially increased risk of identity theft." (Opp. at 4.)[2] While it's a close call, Allen has the better of the arguments.

    1.  *Privacy Injury*

There is no question that, in certain circumstances, a so-called "privacy injury" is cognizable. Consider an illustrative example from Allen's opposition brief: *Herman v. Kratche*, 2006-Ohio-5938 (Ct. App.). In *Herman*, a woman underwent medical treatment at the Cleveland Clinic. *Id.* ¶ 2. Although the treatment was unrelated to work, the Clinic mistakenly sent records of the treatment—which included "private medical information"—to her employer. *Id.* ¶¶ 2–5. The woman sued the Clinic for negligent invasion of privacy. *Id.* ¶ 5. The Clinic argued that the woman failed to prove damages, but the court disagreed, pointing to the woman's "anxiety about her privacy." *Id.* ¶¶ 40–45.

Allen cites *Herman*—and assorted similar cases—for the proposition that "a privacy injury may form the basis of a negligence claim." (Mot. at 4.) But these cases establish only that "Ohio recognizes the tort of negligent invasion of the right of privacy." *Herman*, 2006-Ohio-5938 at ¶ 41. And Allen, of course, didn't sue Wenco for negligent invasion of privacy—which is a standalone tort with its own distinct elements. *See id.* To the contrary, Allen sued Wenco for

---

[2] In opposing Wenco's Motion, Allen does not argue that the alleged "diminution in . . . value of his PII" (*see* Compl. ¶ 31) is cognizable. So the court deems any potential argument related to that allegation waived.

negligence. And the fact that a privacy injury is cognizable in the former context does not necessarily make it so in the latter.

Faced with this reality, Allen shifts gears to another case: *State ex rel. Beacon Journal Publ'g Co. v. City of Akron*, 70 Ohio St. 3d 605 (1994). There, the Supreme Court of Ohio held that Ohio's Public Records Act does not require a municipality to "disclose the SSNs of all of its employees upon demand." *Id.* at 612. It stressed "the high potential for fraud and victimization caused by the unchecked release of city employee SSNs" and referred to identity theft as "perhaps the ultimate invasion of one's privacy." *Id.* at 611–12. Given the facts of the case, however, it didn't come close to suggesting that an employer's failure to adequately protect its employees' SSNs is a compensable harm.

Wenco, for its part, emphasizes that the negligent-invasion-of-privacy cases and *Beacon Journal* posed completely different legal issues from this case. (Reply at 2–6.) True enough. But under *Erie*, the fact that no Supreme Court of Ohio (or, for that matter, Ohio appellate court) decision squarely addresses the issue here—whether a privacy injury is cognizable in negligence—does not foreclose Allen's claims. *See Conlin*, 714 F.3d at 358. It just means that the court must look elsewhere in making its best *Erie* guess. *See Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004) (instructing courts to consider "jurisprudence from other jurisdictions" if "the relevant state judiciary has not spoken to the issue").

And other jurisdictions are split on the issue. *Compare Medoff v. Minka Lighting, LLC*, 2023 WL 4291973, at *9 (C.D. Cal. May 8, 2023) (dismissing data-breach plaintiff's negligence claim because alleged "privacy injury" was "conclusory and vague" and thus not cognizable under California law) *with Mehta v. Robinhood Fin. LLC*, 2021 WL 6882377, at *6 (N.D. Cal. May 6, 2021) (holding that data-breach plaintiffs alleged cognizable damages based on "harm to their

privacy") *and Flores-Mendez v. Zoosk, Inc.*, 2021 WL 308543, at *4 (N.D. Cal. Jan. 30, 2021) (finding "loss of privacy with respect to highly sensitive information" to be a cognizable harm). So there is no easy answer here. Nevertheless, federal standing jurisprudence tips the scales in Allen's favor.

The doctrine of standing—a jurisdictional limitation imposed on the federal courts by Article III of the Constitution— is closely related to damages. To have standing, a "plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). And if a plaintiff meets Article III's injury-in-fact requirement, that plaintiff has almost certainly sustained cognizable damages. *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 828 (7th Cir. 2018) ("To say that the plaintiffs have standing is to say that they have alleged injury in fact, and if they have suffered an injury then damages are available.").

With regard to Allen's alleged privacy injury, the "concreteness" prong of the standing test is particularly instructive. To determine whether a plaintiff has suffered a concrete harm, courts "assess whether the alleged injury to the plaintiff has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021). And applying this principle, courts have held that a privacy injury stemming from a data breach "bears some relationship to a well-established common-law analog: public disclosure of private facts." *Bohnak v. Marsh & McLennan Cos.*, 79 F.4th 276, 285 (2d Cir. 2023); *see also Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 154–55 (3d Cir. 2022) ("In the data breach context, there are several potential parallels to harms traditionally recognized at common law, depending on the precise theory of injury the plaintiff puts forward."). As these cases suggest, the weight of post-*TransUnion* authority establishes that Allen's alleged privacy injury is sufficiently

concrete for Article III purposes. And as the Second Circuit recently held, that means that such an injury "could support a claim for damages." *Bohnak*, 79 F.4th at 289–90.

Without a relevant Ohio precedent to follow, the court finds *Bohnak*'s reasoning persuasive. Accordingly, at this early stage of the litigation, Allen's alleged privacy injury satisfies the "damages" element of negligence.

### 2. Increased Risk of Identity Theft

Ohio caselaw is similarly unclear when it comes to Allen's alleged increased risk of identity theft. As such, Allen analogizes his claim to medical monitoring, which the Supreme Court of Ohio has blessed "under the proper circumstances." *Wilson v. Brush Wellman, Inc.*, 2004-Ohio-5847, ¶ 1, 103 Ohio St. 3d 538. Yet the public-health concerns underlying medical monitoring are absent here, and Allen cites no Ohio cases extending medical monitoring to this (or any other new) context.

Meanwhile, Wenco relies on *Jones v. Ohio Bureau of Workers' Comp.*, 2011-Ohio-1855 (Ct. Cl.). In *Jones*, the Ohio Court of Claims addressed whether a data-breach plaintiff alleging an increased risk of identity theft could meet the injury-in-fact requirement of standing. That court answered in the negative, holding that such a risk was too "hypothetical" to confer standing. *Id.* at ¶ 10. As discussed above, however, the doctrine of Article III standing has come a long way since *Jones*—especially in the data-breach context. *See, e.g.*, *Bohnak*, 79 F.4th 276, 289–90 (2d Cir. 2023) (holding that an "alleged injury arising from the increased risk of harm *is* cognizable for standing purposes"); *Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365, 376 (1st Cir. 2023) (holding that "the risk of future [PII] misuse" confers standing); *Clemens*, 48 F.4th 146, 152–58 (3d Cir. 2022) (finding standing based on identity-theft risk); *Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 388 (6th Cir. 2016) ("Here, Plaintiffs' allegations of a substantial risk of harm, coupled with reasonably incurred mitigation costs, are sufficient to establish a cognizable Article III

injury at the pleading stage of the litigation."). So the court sees little reason to defer to an Ohio trial court's pre-*TransUnion* standing analysis.

Instead, for the reasons outlined at length in *Bohnak*, *Webb*, *Clemens*, and *Galaria*, the court is confident that Allen's alleged increased risk of identity theft gives him standing to sue Wenco. And that conclusion rids *Jones* of any persuasive weight it might have had. Moreover, given the connection between standing and damages, it also suggests the Supreme Court of Ohio would hold that such an injury is cognizable in negligence.

The law of other jurisdictions largely supports Allen, too. Just a few years ago, the Supreme Court of Georgia unanimously held that nearly identical allegations "raise[d] more than a mere specter of harm" and thus could survive a motion to dismiss. *Collins v. Athens Orthopedic Clinic, P.A.*, 307 Ga. 555, 562–64 (2019). A Wisconsin appellate court recently reached a similar conclusion. *Reetz v. Advocate Aurora Health, Inc.*, 405 Wis. 2d 298, 312–18 (Ct. App. 2022). And various federal district courts have done the same. *Huynh v. Quora, Inc.*, 2019 WL 11502875, at *7–8 (N.D. Cal. Dec. 19, 2019); *Sackin v. Transperfect Glob., Inc.*, 278 F. Supp. 3d 739, 749–50 (S.D.N.Y. 2017). Accordingly, the court also finds that Allen's alleged increased risk of identity theft is cognizable.

### B. Economic-Loss Rule

Under Ohio law, "[t]he economic-loss rule generally prevents recovery in tort of damages for purely economic loss." *Corporex Dev. & Constr. Mgmt. v. Shook*, Inc., 2005-Ohio-5409, ¶ 6, 106 Ohio St. 3d 412. Wenco argues that Allen alleges no damages sufficient to overcome this rule. (Mot. at 3–5.) Allen disagrees, and further contends that even if he had alleged purely economic loss, the rule wouldn't apply here. (Opp. at 16–17.) Allen is correct on both scores.

First, Allen plainly alleges noneconomic loss. Noneconomic loss includes any form of "intangible loss." *Whitaker v. M.T. Auto., Inc.*, 2006-Ohio-5481, ¶ 19, 111 Ohio St. 3d 177; O.R.C. § 2307(E). Here, Allen alleges that he suffered a "loss of his privacy" from the Wenco breach. (Compl. ¶ 32.) Because such a loss is no doubt intangible—and thus noneconomic—the economic-loss rule doesn't apply. *See Medoff v. Minka Lighting*, LLC, 2023 WL 4291973, at *8 (C.D. Cal. May 8, 2023) (holding that California's economic-loss rule doesn't bar similar negligence claim where plaintiff had alleged a "privacy injury"); *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1142 (C.D. Cal. 2021) (same).

Second, even where a plaintiff does allege purely economic loss, the economic-loss rule serves to bar only those negligence claims "premised entirely upon the terms of a contract." *Corporex*, 2005-Ohio-5409 at ¶ 10. Where, on the other hand, a plaintiff alleges "a discrete, preexisting duty in tort," a negligence claim may proceed. *See id.* at ¶ 9; *see also* RESTATEMENT (THIRD) OF TORTS: LIAB. FOR ECON. HARM § 3 cmt. c (2020) (explaining that the economic-loss rule "precludes common-law tort claims for financial loss based on negligent conduct that the contract regulates").

At the outset of any economic-loss-rule analysis, then, a court must identify "the source of the duty that forms the basis of the action." *Trax Constr. Co. v. Village of Reminderville*, 2021-Ohio-3481, ¶ 34 (Ct. App.) (emphasis removed). If tort law provides the source of the alleged duty, "a party may recover in tort," regardless of whether the party has suffered purely economic loss; if, however, the alleged duty is "purely a creature of contract," the economic-loss rule applies and "a party may recover based [only] upon breach of contract." *Corporex*, 2005-Ohio-5409 at ¶ 10.

Here, Wenco's alleged duty to better safeguard Allen's PII arose in tort, not in contract. To wit, Allen alleges that Wenco undertook affirmative conduct—collecting his PII—and breached its concomitant duty to "protect [him] against an unreasonable risk of harm to [him] arising out of" that conduct. *See Schneider v. Kumpf*, 2016-Ohio-5161, ¶ 94, 58 N.E.3d 1220 (Ct. App.) (quoting RESTATEMENT (SECOND) OF TORTS § 302 cmt. a (2020)). Likewise, Allen alleges no contractual duty on Wenco's part to regulate data security. So if Wenco had *any* duty to protect Allen's PII, it must have been "a discrete, preexisting duty in tort." *See Corporex*, 2005-Ohio-5409 at ¶ 9. Therefore, even if Allen had alleged purely economic loss, the rule wouldn't apply to Allen's claims.[3]

C.  **Negligence Per Se**

Wenco further urges the court to dismiss Allen's negligence per se claim because Section 5 of the FTC Act—the statute on which the claim is based—lacks a private right of action. (Mot. at 5.) But the availability of negligence per se depends on more than simply whether the statute in question contains a private right of action. Instead, the critical question is whether the statute "contains a general, abstract description of a duty" or "sets forth a positive and definite standard of care whereby a jury may determine whether there has been a violation thereof by finding a single issue of fact." *Sikora v. Wenzel*, 2000-Ohio-406, 88 Ohio St. 3d 493, 496 (cleaned up). Negligence per se is available only where the latter is true. *Id.*

---

[3] The court recognizes that another court applying Ohio's economic-loss rule in the data-breach context has reached a different conclusion. *See Tucker v. Marietta Area Health Care, Inc.*, 2023 WL 423504, *3–4 (S.D. Ohio Jan. 26, 2023). But *Tucker*'s assertion that the "economic loss doctrine does not hinge on how the defendant's duty arose" directly contravenes the Supreme Court of Ohio's leading economic-loss-rule precedent. *Compare id. with Corporex*, 2005-Ohio-5409 at ¶¶ 6–10; *cf. Chemtrol Adhesives*, 42 Ohio St. 3d at 45 (noting that "the key factor" underpinning the economic-loss rule "is the extent, and more important, the source, of the duty owed by the [defendant] to the [plaintiff]").

In relevant part, Section 5 of the FTC Act provides as follows: "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful." 15 U.S.C. § 45(a)(1). Allen alleges that Wenco's lax cybersecurity was an "unfair practice" within the meaning of the statute. (Compl. ¶¶ 75–83.) In support, he cites FTC guidance "fleshing out the meaning of the text of the FTC Act." (Compl. ¶¶ 23–24; Opp. at 20.) But Allen's argument is self-defeating: by relying on extra-statutory sources to determine what constitutes an "unfair" cybersecurity practice, he implicitly concedes that the statute itself provides no such answer. (Opp. at 20.) And indeed it does not. Based on the statutory text alone, there is no "single issue of fact" by which a jury could find that Wenco violated Section 5 of the FTC Act. *See Sikora*, 88 Ohio St. 3d at 496. Instead, a jury would need to look beyond the statute to make such a finding. Section 5's prohibition of "unfair practices" thus typifies "a general, abstract description of a duty." *See id.*; *In re Sonic Corp. Customer Data Sec. Breach Litig.*, 2020 WL 3577341, at *6 (N.D. Ohio July 1, 2020) (Gwin, J.) (holding that Section 5 of the FTC Act "does not lay out objective standards"). Accordingly, the court dismisses Allen's negligence per se claim with prejudice.

## IV. CONCLUSION

For the foregoing reasons, the court grants Wenco's Motion to Dismiss (ECF No. 4) as to Allen's negligence per se claim. The court denies Wenco's Motion as to Allen's negligence claim. IT IS SO ORDERED.

/s/ SOLOMON OLIVER, JR.
UNITED STATES DISTRICT JUDGE

September 29, 2023